UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| ANGELOS WASHINGTON, | ) | |
|---|---|---|
| | ) | Case No. 1:24-cv-146 |
| *Plaintiff,* | ) | |
| | ) | Judge Atchley |
| v. | ) | |
| | ) | Magistrate Judge Steger |
| STATE OF TENNESSEE, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |

## MEMORANDUM AND ORDER

Plaintiff is a prisoner in the custody of the Tennessee Department of Correction ("TDOC") who is proceeding pro se and *in forma pauperis* in this prisoner's civil rights action that was transferred to this District from the United States District Court for the Middle District of Tennessee [Docs. 8, 18]. Before the Court are Plaintiff's second amended complaint [Doc. 17] and his motion requesting that Defendants be served at their place of employment [Doc. 15]. For the reasons set forth below, the Court grants Plaintiff's motion, allows a use-of-force claim to proceed against three individual Defendants, and dismisses the remaining claims and Defendants.

I.     SCREENING STANDARD

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules

of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (citations omitted). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even so, allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

## II. ALLEGATIONS OF PLAINTIFF'S SECOND AMENDED COMPLAINT[1]

At all relevant times, Plaintiff was a TDOC inmate incarcerated in the Bledsoe County Correctional Complex ("BCCX") [Doc. 17 p. 3]. On August 8, 2022, Plaintiff was escorted to Unit 21, cell 108, to start a period of punitive segregation following a disciplinary infraction [*Id.* at 5]. According to TDOC policy, a period of segregation cannot exceed sixty days [*Id.*]. But Plaintiff was held in punitive segregation for eighty days–from August 8, 2022, to October 27, 2022 [*Id.*].

On August 2, 2023, at approximately 12:15 p.m., Sergeant Jason Munsey, Officer Austin Lawson, and Officer Edward Hooten (collectively "Defendants") were escorting Plaintiff to his

---

[1] The transferring court screened Plaintiff's first amended complaint, dismissed its claims and defendants, and permitted Plaintiff "an opportunity to amend his amended complaint to add [Defendants] in their individual capacities" as to his "excessive force claims" [Doc. 8 p. 8]. Plaintiff complied by filing a second amended complaint that is the subject of the Court's screening [*See* Docs. 10, 17].

2

cell [*Id*. at 6]. At the time, Plaintiff, who is in a wheelchair, was fully restrained in handcuffs and leg shackles, and he was wearing a transport hood that covered his nose and mouth [*Id.*].[2] As Plaintiff was sitting in front of his cell, he complained to Sergeant Munsey that he was unable to breathe [*Id.*]. And the transport hood instructions state that it is not to be used "if the prisoner is having difficulties breathing" due to the risk of suffocation [*Id.*]. Despite these instructions, Sergeant Munsey ignored Plaintiff's complaint and told Plaintiff to "[S]hut the f**k up" [Id.]. So, Plaintiff "tore off the transport hood" to breathe [*Id.*].

When Plaintiff removed the transport hood, Sergeant Munsey "falsely accused the Plaintiff of trying to spit on him" even though Plaintiff was facing the wall and Sergeant Munsey was behind Plaintiff [*Id*. at 6-7]. Sergeant Munsey hit Plaintiff in the back of the head, and he and Officers Lawson and Hooten picked Plaintiff up out of his wheelchair, dragged him to his cell, and "slammed him face down on his cell floor" [*Id*. at 7]. Sergeant Munsey used a stun gun to repeatedly stun Plaintiff's chest and back; Officer Lawson kicked Plaintiff in the head multiple times, smashed his foot down on a bedsore on Plaintiff's left buttock, and squeezed Plaintiff's handcuffs "tighter and tighter"; and Officer Hooten attached a leash to Plaintiff's handcuffs and leg shackles that he pulled to keep Plaintiff's body flat while Sergeant Munsey and Officer Lawson "attack[ed]" Plaintiff [*Id.*]. Plaintiff suffered puncture wounds from the repeated use of the stun gun [*Id*. at 8]. He also suffered a swollen head, puncture wounds to his back and stomach, and bruises to his wrists [*Id.*].

---

[2] Plaintiff does not describe the type of type of transport hood used in this case, but generally, a transport hood is a device used to prevent attempts at biting or spitting. *See* Forensics Source, *The Tranzport Hood*, https://forensicssource.com/products/the-tranzport-hood-f_183 (last visited Apr. 11, 2024).

Plaintiff maintains that other matters have violated his rights, as well. First, Plaintiff complained about the use of the transport hood for five months but was denied the right to have access to a face mask he could breathe in [*Id*. at 9-10]. Second, Institutional Investigators Dustin Boulden and Gabriel Budke "continue to let" Defendants have contact with Plaintiff despite the "many grievances" Plaintiff has filed about them [*Id*. at 10]. Third, Defendants retaliate against Plaintiff "every chance they get by trashing [his] cell during cell search, tampering with [his] food trays, and throwing away [his] in house mail" [*Id.*]. And finally, TDOC and its employees "knew or should have known of the serious nature of the matters at hand and had direct knowledge of the [P]laintiff['s] disability" [*Id*. at 11]. But BCCX "officials and employees" denied Plaintiff proper medical attention for his wounds [*Id*.].

Aggrieved by these events and circumstances, Plaintiff asks the Court to award him monetary damages and court costs against Defendants in their individual capacities [Doc. 17 p. 1, 2, 12].

## III. ANALYSIS

Plaintiff invokes this Court's jurisdiction under 20 U.S.C. § 1681(a), 28 U.S.C. § 1343(a), and 42 U.S.C. §1983 [Doc. 17 p. 3]. But 20 U.S.C. § 1681(a) provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . .". 20 U.S.C. § 1681(a). And Plaintiff has not raised any facts suggesting a viable gender-based claim. Therefore, any claims under § 1681 will be **DISMISSED**.

The source of Plaintiff's right to sue in this case is 42 U.S.C. § 1983. And 28 U.S.C. § 1343(a) provides the court with jurisdiction over § 1983 cases. *See Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107 n.4 (1989) (describing § 1343(a)(3) as the "jurisdictional

4

counterpart to § 1983"). To state a claim under § 1983, Plaintiff must establish that a "person" acting "under color of" state law deprived him of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983.

In screening Plaintiff's second amended complaint, the transferring court stated "[t]he allegations in the second amended complaint state colorable excessive force claims under Section 1983 against [Defendants] in their individual capacities, and those claims will be permitted to proceed for further development" [Doc. 18 p. 2]. And Plaintiff explicitly raises excessive force claims against Defendants in their individual capacities [Doc. 17 p. 1]. But he also alleges facts that have nothing to do with his allegations of excessive force [*See generally* Doc. 17]. Therefore, out of an abundance of caution, the Court will address all potential parties and claims that may be liberally construed from Plaintiff's second amended complaint.

### A. State of Tennessee/TDOC

Although Plaintiff states that he is suing Defendants in their individual capacities [Doc. 17 p. 1], he also maintains that, since they were acting in the scope of their employment when Plaintiff's rights were allegedly violated, liability is imputed to the State of Tennessee and TDOC under the principle of *respondeat superior* [*Id*. at 3-4]. But Plaintiff cannot maintain suit against either the State or TDOC. First, there is no *respondeat superior* liability in a § 1983 action. *See, e.g., Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (holding local government "cannot be held liable under §1983 on a *respondeat superior* theory"). But more importantly, and as Plaintiff was previously advised by the transferring court, neither the State of Tennessee nor the TDOC are suable entities under § 1983 [*See* Doc. 8 p. 6-7].

The TDOC is an arm of the State of Tennessee, and therefore, suit against the TDOC is suit against the State itself. *See Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006)

(holding TDOC is equivalent of the "State"). However, "a State is not a person within the meaning of § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989); *Hix*, 196 F. App'x at 355 (holding TDOC is not a "person" within meaning of § 1983). And the Eleventh Amendment prohibits suits against a state or its agencies in federal court for damages, unless Congress has abrogated its immunity, or the state has expressly waived it. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-101 (1984); *Quern v. Jordan*, 440 U.S. 332, 345 (1979). The State of Tennessee has not waived its immunity to suit under § 1983. *Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986). Accordingly, Plaintiff cannot maintain suit against TDOC or the State of Tennessee, and all claims against them will be **DISMISSED**.

### B. Punitive Segregation Claims

Plaintiff makes a two-fold argument that his eighty days in punitive segregation is constitutionally problematic: (1) it violated policy because Plaintiff was held twenty days beyond the maximum; and (2) it was cruel and unusual punishment to punish him beyond the policy maximum [Doc. 17 p. 5-6].

Plaintiff's first argument fails to state a claim for relief, because failure to follow institutional policy is not a constitutional violation. *See, e.g.*, *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007) (holding that a failure to follow a policy directive does not rise to the level of a constitutional violation because a policy directive does not create a constitutional right or protectable liberty interest).

And the fact that Plaintiff was held in administrative segregation beyond the maximum allowed by TDOC policy does not, without more, violate the Constitution. *See, e.g., Hutto v. Finney*, 437 U.S. 678, 685-86 (1978) ("[P]unitive isolation 'is not necessarily unconstitutional, but it may be, depending on the duration of the confinement and the conditions thereof.' . . . . It is

6

perfectly obvious that every decision to remove a particular inmate from the general prison population for an indeterminate period could not be characterized as cruel and unusual."). Plaintiff's second amended complaint does not set forth any facts about the conditions in punitive segregation, and Plaintiff's mere placement in punitive segregation for eighty days "does not constitute cruel and unusual punishment." *Hutchinson v. Hoffman-Phillips*, No. 1:11CV198 LMB, 2011 WL 5444324, at *2 (E.D. Mo. Nov. 10, 2011) (holding six-month placement in segregation did not constitute cruel and unusual punishment); *see also Ross v. Reed*, 719 F.2d 689, 697 (4th Cir. 1983) ("As a matter of law, [the prisoner]'s three months in segregation . . . does not offend contemporary notions of decency and does not constitute a violation of the [E]ighth [A]mendment."). Accordingly, any claims related to Plaintiff's punitive segregation will be **DISMISSED**.

### C. Grievances

Plaintiff complains that Internal Affairs Investigators Dustin Boulden and Gabriel Budke "continue to let" Defendants come into contact with Plaintiff despite the grievances Plaintiff has filed [Doc. 17 p. 10]. But neither Boulden nor Budke are named Defendants in this action. Moreover, "[t]he 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999))). Accordingly, any claims related to the failure to act on or satisfactorily resolve Plaintiff's grievances regarding Defendants will be **DISMISSED**.

### D. Retaliation

Plaintiff maintains that Defendants retaliate against him "every chance they get" by "trashing" his cell, "tampering with [his] food trays, and throwing away [his] in house mail" [Doc.

7

17 p. 10]. But to establish a retaliation claim, Plaintiff must show that (1) he "engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Plaintiff insinuates that Defendants retaliate against him because he filed grievances against them [Doc. 17 p. 10]. But he has not alleged any material facts to support a finding that Defendants' conduct was prompted by a retaliatory motive. *See Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010) ("[C]onclusory allegations of [a] retaliatory motive unsupported by material facts will not be sufficient to state a . . . claim" under § 1983." Rather, Plaintiff "merely alleges the ultimate fact of retaliation." *Murray v. Unkown Evert,* 84 F. App'x 553, 556 (6th Cir. 2003) (internal citations omitted). Therefore, this claim will be **DISMISSED**.

E. Medical Needs

Plaintiff maintains that TDOC and its employees knew of Plaintiff's "disability" and denied him proper medical attention for his wounds [Doc. 17 p. 11]. But, as noted previously, Plaintiff cannot maintain suit against TDOC. *See Hix*, 196 F. App'x at 355. Neither can he maintain suit against TDOC employees in their official capacities, as that is the equivalent of suit against TDOC itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity").

And to demonstrate that Defendants violated Plaintiff's right to constitutionally adequate medical care under the Eighth Amendment, he must show a "sufficiently serious" medical need that the Defendants responded to with "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994). That is, a prisoner must show that "the official knows of and disregards an

8

excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  Here, Plaintiff only makes the conclusory assertion that he was denied medical care.  Therefore, Plaintiff has not alleged any facts that would allow the Court to plausibly infer a violation of his Eighth Amendment right to medical care, and this claim will be **DISMISSED**.

F. **Due Process**

Plaintiff maintains that Defendants violated his right not to "be deprived of life, liberty, or property without due process of law" when officials continued to use the transport hood despite his repeated complaints that he could not breathe in it [Doc. 17 p. 9-10].  To state a due process claim, Plaintiff must demonstrate that he was deprived of an interest protected by the Due Process Clause.  *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish one of these interests at stake.").  An inmate has a due process interest in restrictions on his confinement that impose "atypical and significant hardship" relative to the ordinary circumstances of prison life.  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  Plaintiff does not provide any factual background to indicate why the transport hood was used in this case, but the Court notes that the wearing of a transport hood is similar to the use of restraints.  And a prisoner's placement in restraints does not implicate a protected liberty interest.  *See, e.g., Grinter v. Knight*, 532 F.3d 567, 573-74 (6th Cir. 2008) (finding prisoner had

9

no protected liberty interest in freedom from use of four-point restraints). Therefore, this claim will be **DISMISSED**.[3]

### G. Excessive Force

As noted by the transferring court [*see* Doc. 18 p. 2], Plaintiff has stated plausible claims against Sergeant Munsey, Officer Austin Lawson, and Officer Edward Hooten in their individual capacities for an excessive use of force, and this claim will proceed against these Defendants.

## IV. MOTION FOR SERVICE OF PROCESS

Plaintiff filed a motion asking the Court to serve Defendants at BCCX, where they are employed [Doc. 15]. The Court will **GRANT** the motion. But, as set forth below, Plaintiff will be responsible for completing the service packets for Defendants and returning them to the Court, so he should include the desired address(es) on the individual service packets.

## V. CONCLUSION

For the reasons set forth above:

1. Plaintiff's use-of-force claim will **PROCEED** against Defendants Munsey, Lawson, and Hooten in their individual capacities;

2. The Clerk is **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for Defendants Munsey, Lawson, and Hooten;

3. Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office within twenty-one (21) days of entry of this Order;

4. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service, *see* Fed. R. Civ. P. 4;

5. Plaintiff is **NOTIFIED** that if he fails to timely return the completed service packets, this action will be dismissed;

---

[3] Though Plaintiff does not raise these allegations as Eighth Amendment issue, the Court notes Plaintiff has not alleged facts about the reasons to use the transport hood that would allow the Court to plausibly infer that Defendants' use of it on Plaintiff was cruel and unusual. *See, e.g., Jennings v. Fuller*, 659 F. App'x 867, 871 (6th Cir. 2016) (noting "spit hoods" have legitimate uses in appropriate circumstances).

6. Defendants shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If any Defendant fails to timely respond to the complaint, it may result in entry of judgment by default against that Defendant;

7. All other claims and Defendants are **DISMISSED**; and

8. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**